# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| RASHEEN ALDRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1677 CAS |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This civil rights matter under 42 U.S.C. § 1983 is before the Court on a motion to dismiss

and alternative motion to strike plaintiff Rasheen Aldridge's First Amended Complaint

("complaint"), filed by defendants City of St. Louis, Missouri ("City"), John Hayden, and William

Olsten.[1]  Plaintiff opposes the motion in all respects and the defendants have replied, so it is ready

for ruling.  For the reasons discussed below, the Court will grant in part and deny in part the motion

to dismiss, and will deny the motion to strike.   Plaintiff will be granted leave to amend his

complaint.

## I.  Factual and Procedural Background

Plaintiff Rasheen Aldridge alleges that he is currently the elected Democratic Committeeman

for City's 5th Ward, lives in the City, and is known for meeting with President Obama in the Oval

Office to discuss police brutality and the plight of America's black youth.  The complaint alleges

facts concerning the Circuit Court for the Twenty-Second Judicial Circuit of Missouri's issuance

---

[1]The defendants' motion to dismiss states it is filed "exclusive of 'John Doe' defendants."
(Doc. 26 at 1.)  There are, however, no Doe defendants named in this action.  The Court also notes
that defendants' memorandum in support of the motion to dismiss was prepared using a smaller font
size than the motion to dismiss itself, in an apparent effort to evade the fifteen-page briefing limit
of E.D. Mo. Local Rule 4.01(D).  For all future filings, defendants shall use a 12-point font.

of findings and verdict in <u>State of Missouri v. Stockley</u>, Cause No. 1622-CR02213-01, on September 15, 2017, acquitting former St. Louis police officer Jason Stockley of the charge of first-degree murder of Anthony Smith. The complaint alleges the <u>Stockley</u> verdict prompted some members of the public to engage in protest activities in the City and surrounding communities, as the "acquittal was yet another example of white St. Louis-area police officers killing African-American citizens with impunity," and "supported their view that the American criminal justice system does not believe that Black lives matter." (Doc. 18, ¶¶ 19-21.) The complaint alleges that although most of the protests were non-violent, in response St. Louis Metropolitan Police Department ("SLMPD") officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents. (Doc. 18, ¶¶ 19-27.)

The complaint alleges that plaintiff took part in a peaceful public protest against police violence on September 29, 2017. The protest occurred on the streets of downtown St. Louis, including near Busch Stadium, beginning at approximately 7:00 p.m. The complaint alleges that at around 9:00 p.m., protestors who had been marching elsewhere in downtown St. Louis began making their way south on Broadway towards Busch Stadium and the intersection of Broadway and Walnut Street. The complaint alleges that when the protestors reached the intersection of Broadway and Walnut, SLMPD officers "began indiscriminately using pepper spray on civilians without provocation of violence or criminal behavior." Video evidence shows the protestors were acting peacefully and calmly. (Doc. 18, ¶¶ 45-46.)

The complaint alleges that without warning, a SLMPD officer violently threw one protestor, a Reverend Gray, to the ground, breaking his glasses, and the protestors then began to loudly voice their disapproval of the force used, and many people in the area, including protestors, loudly questioned why the police decided to use violence. The complaint alleges that two SLMPD officers

began to chase another protestor, Calvin Kennedy, and tasered him without warning after an officer grabbed Mr. Kennedy. The protestors then began demanding why the SLMPD had deployed a Taser.

The complaint alleges that video shows defendant Olsten, a SLMPD officer, yelled at a protestor, "Come and fuck me up then," and moved toward the protestors, while two other SLMPD officers tried to grab Olsten, calm him down, and move him away from the crowd. The complaint alleges the video shows defendant Hayden, at the time a SLMPD major, standing approximately five feet to the right of Olsten. The complaint alleges that although Olsten was not in danger or trying to extricate himself from a dangerous situation, he became more agitated as evidenced by his "very pronouncedly chomp[ing] on his gum and begin[ing] to flex his muscles." (Doc. 18, ¶¶ 55-58.) Then, Olsten pulled out and fired a "large fogger like canister of pepper spray" without first giving any dispersal order or warning, and the spray hit plaintiff and three other citizens. (Id., ¶¶ 59-61.)

The complaint alleges that plaintiff began to feel excruciating pain from the pepper spray, his eyes began to burn, mucus ran from his nose, and his breathing became labored. The complaint alleges that defendant Olsten made no attempt to effectuate any arrests after spraying plaintiff and other with the pepper spray, and instead walked away. The complaint alleges that during the incident, defendant Hayden was in the middle of the SLMPD officers wearing a white shirt, indicating he was a supervisor. The complaint alleges, "Hayden took no steps to prevent his officers from inflicting punishment on peaceful protestors and members of the media," and "is observed in the video using a cell phone to record the activities and the police response." (Doc. 18, ¶ 67.)

The complaint contains factual allegations describing other instances when SLMPD officers without warning deployed chemical agents against individuals observing, recording, or participating

in protest activity; and this Court's issuance in a prior case, <u>Templeton</u>,[2] of a temporary restraining order and its subsequent approval of a settlement agreement restricting the SLMPD from enforcing any rule, policy, or practice that granted law enforcement officials the authority or discretion to utilize chemical agents for the purpose of dispersing groups of individual engaged in non-criminal activity without, among other things, first issuing clear and unambiguous warnings that chemical agents would be utilized, and providing sufficient opportunity for the individual to heed the warnings and exit and area; or to utilize chemical agents on individuals engaged in non-criminal activity for the purpose of frightening them or punishing them for exercising their constitutional rights. (Doc. 18, ¶¶ 26-36.)

The complaint also contains factual allegations concerning this Court's issuance of a preliminary injunction in a subsequent case, <u>Ahmad</u>,[3] that the SLMPD's customs or policies of (1) committing discretionary authority to police officers to declare unlawful assemblies in the absence of any threat of force or violent activity, (2) permitting officers to issue vague dispersal orders to protestors exercising First Amendment rights in an arbitrary and retaliatory way and then enforce those orders without sufficient notice and opportunity to comply before being subjected to use or force or arrest, and (3) using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police, in retaliation for the exercise of their First Amendment rights; all permit officers to exercise their discretion in a manner that impermissibly curtails citizens' First Amendment rights of assembly and free speech, and Fourteenth Amendment due process rights. (Doc. 18 ¶¶ 68-71.)

---

[2]<u>Templeton, et al. v. Dotson, et al.</u>, No. 4:14-CV-2019 CEJ (E.D. Mo.).

[3]<u>Ahmad, et al. v. City of St. Louis, Missouri</u>, No. 4:17-CV-2455 CDP (E.D. Mo.).

Attached to the complaint as exhibits are the Findings and Verdict issued in <u>State of Missouri v. Stockley</u>, No. 1622-CR02213-01 (22nd Jud. Cir., State of Missouri); the Temporary Restraining Order issued in <u>Templeton</u> on Dec. 11, 2014; a Settlement Agreement in <u>Templeton</u> dated March 25, 2015; the transcript of a preliminary injunction hearing held in <u>Ahmad</u> on October 28, 2017; and a Memorandum and Order of Preliminary Injunction issued in <u>Ahmad</u> on November 15, 2017.[4] The exhibits are part of the complaint for all purposes. <u>See</u> Rule 10(c), Fed. R. Civ. P.

Plaintiff filed this action on October 2, 2018, asserting the existence of federal question jurisdiction. The complaint asserts the following federal claims under 42 U.S.C. § 1983: Violation of plaintiff's First and Fourteenth Amendment rights to assembly, association, free speech, and a free press against defendants Olsten and Hayden (Count I); conspiracy claims against all defendants for violating plaintiff's civil rights by using excessive force against him, assaulting him, depriving him of his right to be free from unreasonable search and seizure, and maliciously prosecuting him (Count II); a <u>Monell</u> claim against the City claiming the violations of plaintiff's civil rights were caused by a policy, practice, or custom of the City, and by its failure to train, discipline, and supervise SLMPD officers with respect to use of force (Count III);[5] and a Fourth and Fourteenth Amendment excessive force claim against defendant Olsten (Count VII). The complaint also asserts supplemental state law claims, <u>see</u> 28 U.S.C. § 1367(a), against all of the defendants: assault (Count

---

[4]Plaintiff failed to comply with Section II.F. of the Court's Administrative Procedures for Electronic Case Filing/Case Management, and the instructions that appear in red text on the filing screens, by failing to label each exhibit to the complaint with both an exhibit designation and a brief description of the exhibit. In the future, all parties shall comply with this and all other filing requirements, and shall review the Court's Administrative Procedures and the undersigned's Judge's Requirements.

[5]<u>Monell v. Department of Social Servs. of City of New York</u>, 436 U.S. 658 (1978).

IV); intentional infliction of emotional distress (Count V); negligent infliction of emotional distress (Count VI); and battery (Count VIII).

All of the defendants move to dismiss the complaint in its entirety for failure to comply with the "short and plain statement" requirement of Rule 8(a), Federal Rules of Civil Procedure. Defendant Hayden moves to dismiss plaintiff's § 1983 claims against him in Count I on the basis that the complaint fails to show he personally participated in or tacitly collaborated in Olsten's use of force against plaintiff. Defendant City moves to dismiss plaintiff's Section 1983 claims against it in Counts II and III for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., and the state law tort claims in Counts IV, V, VI, and VIII on the basis of sovereign immunity. Defendants Hayden and Olsten move to dismiss plaintiff's state law claims against them in Counts IV, V, VI, and VIII on the basis of the Missouri official immunity doctrine. In the alternative, all defendants move to strike certain paragraphs of the complaint as immaterial or impertinent pursuant to Rule 12(f), Fed. R. Civ. P.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., and "raise[s] a right to relief above the speculative level." Twombly, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted).

## III. Discussion

### A. Defendants' Motion to Dismiss Under Rule 8(a)

Defendants move to dismiss the complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), Fed. R. Civ. P., arguing it is "replete with tendentious and immaterial allegations attacking the integrity of Missouri courts, injecting spurious issues to which defendants cannot possibly frame a response, and including voluminous exhibits and references to other litigation including improper reference to a settlement agreement, without specifying wherein and how the exhibits reflect facts germane to plaintiff's claims." (Doc. 27 at 2). Defendants assert they are prejudiced because they are forced to "try to guess at how much of the scattershot allegations actually pertain to plaintiff's claims against defendants, as opposed to pertaining to plaintiff's objections to the Missouri criminal justice system and policing in general." (Id.) Defendants object to plaintiff's "inclusion of voluminous exhibits, such as the transcript of a preliminary injunction hearing in a parallel case," and assert that plaintiff's allegations concerning their alleged violation of a "consent decree are improper in light of F.R.Ev. [sic] 408(a)." (Id. at 3.)

Under Rule 8(a), a claim for relief is required to contain a short and plain statement of the claim. Because a plaintiff must now show plausibility, complaints naturally tend to include more factual detail and be longer than before the Supreme Court decided <u>Twombly</u> and <u>Iqbal</u>. Here, plaintiff's complaint is twenty-four pages long, contains numbered paragraphs, identifies each defendant by name, makes specific factual allegations as to each defendant's conduct, and sets forth separate counts that identify each claim and the defendant(s) against which it is asserted.

The complaint's factual allegations and supporting exhibits to which defendants object, i.e., those concerning the <u>Stockley</u> verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests, are relevant to plaintiff's <u>Monell</u> claim against the City at minimum. Defendants' bald assertion that the complaint's reference to the <u>Templeton</u> settlement agreement violates Federal Rule of Evidence 408(a) is without merit, as the Rules of Evidence concern the admission of evidence, not pleading standards.

In contrast to cases where dismissal for violation of Rule 8(a) is appropriate, the complaint here is not so lengthy, disorganized, vague, or ambiguous as to be unintelligible. <u>Cf.</u> <u>Michaelis v. Nebraska State Bar Ass'n</u>, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of a 98-page pro se complaint, the "style and prolixity" of which "would have made an orderly trial impossible."); <u>Smith v. Republic Servs., Inc.</u>, 2017 WL 4038143, at *3 (E.D. Mo. Sept. 13, 2017) (dismissing complaint under Rule 12(b)(6), noting it violated Rule 8(a) because it did not contain numbered paragraphs, was "overly wordy with an incomprehensible pattern of capitalized and not capitalized words," and failed to clearly identify each defendant by name and articulate specific facts about that defendant's wrongful conduct); <u>Favaloro v. BJC Healthcare</u>, 2015 WL 1603054, at *2 (E.D. Mo. Apr. 9, 2015) (denying leave to file amended complaint for failure to comply with Rule 8 in

relatively simple employment action where complaint was "90 pages long, include[d] 959 paragraphs, multiple subparagraphs, sub-subparagraphs (i.e., ¶¶ 800.68.1, 800.68.2, 800.68.2, et seq.), and contain[ed] wholly irrelevant and scandalous material.").

Defendants' motion to dismiss the complaint for failure to comply with Rule 8(a) will be denied.

### B. Defendant Hayden's Motion to Dismiss

In a one-paragraph argument, defendant Hayden moves to dismiss plaintiff's § 1983 claims, which he does not identify by count or title. Hayden states there is no respondeat superior liability under § 1983, and argues he cannot be held liable as a supervisor based on his subordinate Olsten's use of force, in the absence of any allegations that Hayden personally participated in or tacitly collaborated in a constitutional tort. Hayden states the complaint does not allege he personally participated in a constitutional tort, and fails to allege he was aware of the illegal behavior by Olsten, or that the duration of the incident was sufficient to have allowed him to intervene, such that an inference of tacit approval could arise, citing White v. Jackson, 865 F.3d 1064, 1081 (8th Cir. 2017).

As a threshold matter, Hayden's bare-bones argument for dismissal does not address plaintiff's § 1983 First and Fourteenth Amendment claims in Count I or the § 1983 civil conspiracy claims in Count II. The single paragraph addresses only plaintiff's excess force claim, a Fourth and Fourteenth Amendment claim set forth in Count VII. The Court therefore concludes Hayden's motion to dismiss is directed only to plaintiff's excess force claim and limits its discussion accordingly.[6]

---

[6]To the extent the complaint's claims are asserted against Hayden in his official capacity, they are actually claims against the City. See Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006). The Court notes that although plaintiff sues Hayden in both his individual and official capacities, the complaint fails to state in which capacity the various claims are asserted against

The complaint does not allege a claim of excessive force against Hayden. The title of Count VII, "42 U.S.C. § 1093 – Fourth and Fourteenth Amendment; Excessive Force (Against Defendant Olsten)" is directed only to Olsten. While the body of Count VII refers to "defendants," the alleged conduct upon which the claim is based is assaulting and spraying plaintiff with pepper spray. Nowhere does the complaint allege, in the Facts section or otherwise, that Hayden assaulted or sprayed plaintiff with pepper spray. Courts "are not concerned . . . with the labels a party attaches to a claim. Instead, we focus on the substance of the underlying factual allegations." In re Baycol Prods. Litig., 732 F.3d 869, 875 n.4 (8th Cir. 2013). That said, "A district court . . . is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

There is no vicarious liability under 42 U.S.C. § 1983, Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691 (1978), and Section 1983 does not "sanction tort by association." Smith v. City of Minneapolis, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted). A supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort. See Clay v. Conlee, 815 F.2d 1164, 1169 (8th Cir. 1987). Plaintiff has not alleged a claim of excess force against Hayden and the Court will not conjure one based on plaintiff's alleged facts.[7]

_____

Hayden. This is true for the claims against Olsten as well. Plaintiff should remedy these defects when amending his complaint in accordance with this Memorandum and Order.

[7]Plaintiff argues he states a claim against Hayden for failure to supervise. The Eighth Circuit recognizes that a supervisor may be held individually liable under § 1983 if he either "directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation." Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007). Here, the complaint fails to allege facts, as opposed to mere conclusions, that Hayden was personally involved in the alleged violations of plaintiff's constitutional rights.

Defendant Hayden's motion to dismiss, which is directed solely to a claim for failure to intervene in the use of excessive force, will be denied as moot.

## C. Defendant City's Motion to Dismiss

### 1. *Count II – Civil Conspiracy Claim*

In Count II, plaintiff asserts a § 1983 claim that all of the defendants "acting in their individual capacities and under color of law" conspired together and reached a mutual understanding

---

To hold a supervisor liable where a failure to properly supervise or train the offending officer caused a deprivation of constitutional rights, "The plaintiff must show that the supervisor '(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff].'" Perkins v. Hastings, 915 F.3d 512, 518 (8th Cir. 2019) (quoting Brewington v. Keener, 902 F.3d 796, 803 (8th Cir. 2018)). To show deliberate indifference or tacit authorization, a plaintiff must allege and prove the supervisor "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient. 'To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability.'" S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015) (quoting Livers, 700 F.3d at 356)). None of the counts in the complaint allege legal allegations of failure to supervise with regard to Hayden, and it does not appear that the facts as presently alleged would support such a claim.

Defendants' motion interprets plaintiff's Fourth Amendment claim as asserting a failure to intervene claim against Hayden. With respect to a Fourth Amendment failure to intervene claim, a "police officer may be liable if he does not intervene to prevent the use of excessive force when '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (quoting Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009)). The complaint's factual allegations, accepted as true and given the reasonable inferences that arise therefrom, might potentially support a claim against Hayden for failure to intervene. The complaint does not, however, set forth such a claim or make the required factual and legal assertions. Because the complaint alleges facts that might reasonably support a Fourth Amendment claim against Hayden, however, the Court will grant plaintiff leave to amend his complaint to assert such a claim, if that was his intent.

to undertake a course of conduct that violated plaintiff's rights through the use of excessive force by deploying chemical agents.

The City moves to dismiss plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1078 (8th Cir. 2016). The City states the complaint alleges it conspired with its police officers Hayden and Olsten to violate plaintiff's rights, and that Hayden and Olsten were not acting outside the scope of their employment duties but rather were engaged in improprieties in the execution of their duties. The City argues this is a similar situation to Kelly, in which the plaintiff's claims were barred by the intracorporate conspiracy doctrine. The City also argues the civil conspiracy claim fails because the underlying claims on which the conspiracy is premised fail, citing Cook v. Tadros, 312 F.3d 386, 388-89 (8th Cir. 2002).

Plaintiff responds that Kelly involved a conspiracy claim under 42 U.S.C. § 1985, and is not controlling here as the Eighth Circuit has not determined whether the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims. Plaintiff asserts that courts in this district have repeatedly denied motions to dismiss § 1983 conspiracy claims based on the doctrine, citing Powers v. City of Ferguson, 229 F.Supp.3d 894, 906 (E.D. Mo. 2017), Golden v. Moutray, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018), and Anzaldua v. Northeast Ambulance & Fire Prot. Dist., 2014 WL 466234, at *8 (E.D. Mo. Feb. 5, 2014), aff'd in part, rev'd in part on other grounds, 793 F.3d 822 (8th Cir. 2015). Plaintiff further responds that he has adequately pleaded federal civil rights claims in Counts I–III and VII,[8] and therefore the City's second argument is without merit.

---

[8] Plaintiff's opposition incorrectly refers to Count IX, but the complaint does not include a Count IX.

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." Id. (citation omitted). "A civil conspiracy claim requires the plaintiffs to allege sufficient "specific facts" giving rise to an inference of a meeting of the minds between the defendants to violate the plaintiff's constitutional rights. Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010).[9]

The City's argument that plaintiff's § 1983 conspiracy claim must be dismissed under the intracorporate conspiracy doctrine is unpersuasive. The doctrine, which the Eighth Circuit has applied to conspiracy claims under 42 U.S.C. § 1985, provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." Kelly, 813 F.3d at 1078 (quoting L.L. Nelson Enters., Inc. v. County of St. Louis, Mo., 673 F.3d 799, 812 (8th Cir. 2012)). As plaintiff states, however, the Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims. The Court will decline to extend the doctrine's reach in the absence of direction from the Eighth Circuit.

In addition, this Court has concluded on several occasions that it is inappropriate to apply the doctrine at the dismissal stage. See Powers, 229 F.Supp.3d at 906; Golden, 2018 WL 1784395, at *4; Anzaldua, 2014 WL 466234, at *8. And, as Judge Noce observed in Golden, some other

---

[9]The Court offers no comment as to whether plaintiff has adequately alleged specific facts giving rise to an inference of a meeting of the minds among the defendants, as this issue was not raised in the motion to dismiss.

district courts have affirmatively held the doctrine does not apply to § 1983 conspiracies to commit excessive force:

> Some courts have held that the intracorporate conspiracy doctrine does not protect conspiracies to commit excessive force under Section 1983. See, e.g., McDorman v. Smith, 2005 WL 1869683, at *6 (N.D. Ill. Aug. 2, 2005). Those courts have reasoned that "the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," Newsome v. James, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000), and "police misconduct ... does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making." McDorman, 2005 WL 1869683 at *6; see also Howard v. City of Chicago, 2004 WL 2397281 at *12 (N.D. Ill. Oct. 25, 2004).

Golden, 2018 WL 1784395, at *4.

For these reasons, the City has not established it is entitled to dismissal of plaintiff's § 1983 civil conspiracy claim based on the intracorporate conspiracy doctrine. The Court can readily dispose of the City's second argument, that plaintiff's § 1983 conspiracy claim fails because all of the underlying claims fail. The defendants' motion to dismiss does not attempt to challenge plaintiff's federal civil rights claims against defendant Olsten in Counts I and VII. Because a constitutional violation might be proved on those claims, this argument lacks merit. See White, 519 F.3d at 815. The City's motion to dismiss plaintiff's § 1983 civil conspiracy claim will be denied.

### 2. Count III – *Monell* Municipal Liability Claim

In Count III, plaintiff alleges the City is liable for the allegedly unconstitutional actions of Hayden and Olsten in violating his First and Fourth Amendment rights, because the violations were caused by a policy, practice, or custom of the SLMPD as follows:

> a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;
>
> b. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

c.  SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or [sic] unlawful conduct;

d.  Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(Doc. 18, ¶¶ 93a.-d.)  Plaintiff also alleges the City is liable for constitutional violations he suffered because it inadequately trained, supervised, and disciplined SLMPD officers with respect to their use of force.  (Id. ¶ 94.)

The City moves to dismiss Count III, arguing that plaintiff fails to allege facts sufficient to show it had a widespread custom, practice, or official policy with respect to violating protestors' First and Fourth Amendment rights, or that it failed to train, discipline, or supervise its police officers.

Plaintiff responds that the complaint states a plausible claim for relief under Monell because he alleges facts showing that as early as 2014, there were at least three incidents where police used chemical agents against protestors without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions, (Doc. 18, ¶¶ 22-26), which led this Court to enter a temporary restraining order restraining the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity."  (Doc. 18, Ex. 2.)  Plaintiff states the complaint refers to and includes as an exhibit a settlement agreement the City entered into, which included its agreement not to enforce any rule, policy, or practice that grants law enforcement officials the authority or discretion to use chemical agents for the purpose of dispersing groups of individuals engaged in non-criminal

activities or "for the purpose of frightening them or punishing them for exercising their constitutional rights." (Doc. 18, ¶ 31, Ex. 3.) Plaintiff also states the complaint alleges that within two months after entering into the settlement agreement, the SLMPD began to violate its terms by indiscriminately using chemical agents against peaceful, non-criminal protestors without warning. (Doc. 18, ¶¶ 33-35.)

For § 1983 liability to attach to a governmental entity, plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. Mick v. Raines, 883 F.3d 1075, 1089 (8th Cir. 2018). The City argues that plaintiff fails to adequately plead any of these.

### a. Official Policy, or Custom or Practice

The City argues that plaintiff fails to plead facts identifying an official policy, or a widespread custom or practice, that directly caused the violation of his First and Fourth Amendment rights. In the Section 1983 municipal liability context, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Corwin v. City of Independence, Mo., 829 F.3d 695, 700 (8th Cir. 2016). Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). To do so, the plaintiff must demonstrate:

> 1)      The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)      Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)      That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013) (quoted case omitted).

A plaintiff need not identify the specific unconstitutional policy to survive a motion to dismiss, see Crumpley-Patterson v. Trinity Lutheran Hospital, 388 F.3d 588, 591 (8th Cir. 2004), but he or she must, at the least, allege facts that would support the drawing of an inference that the conduct complained of resulted from the existence of an unconstitutional policy or custom. Id. Accordingly, a complaint is not deficient because it fails to incorporate language specifically alleging the existence of an unconstitutional policy or custom. Doe ex rel. Doe v. School Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003).

Here, the complaint alleges the existence of specific SLMPD policies or customs that plaintiff alleges were the moving force behind the constitutional violations he suffered. (Doc. 18, ¶¶ 93.a.-d.). The complaint alleges sufficient facts to establish a pattern of conduct by SLMPD officers, of using chemical agents without warning against peaceful protestors complaining of police actions, based on multiple incidents in October and November 2014, May, July, and August 2015, and September 15, 17, and 29, 2017. The complaint also alleges the City entered into a settlement agreement in March 2015 in the Templeton case, in which it agreed not to utilize chemical agents to disperse groups of individuals engaged in non-criminal activity, without first issuing clear and unambiguous warnings that such chemical agents would be used, among other protections, but thereafter SLMPD officers continued to use chemical agents against non-violent protestors.

These factual allegations are sufficient to support the existence of an unconstitutional policy or custom, from which one could begin to draw a plausible inference that the conduct plaintiff complains of resulted from an unconstitutional policy or custom. See Crumpley-Patterson, 388 F.3d at 591. The City's motion to dismiss plaintiff's Monell claims based on an unconstitutional policy or custom will therefore be denied.

### b. Failure to Train or Supervise

The City moves to dismiss plaintiff's Monell claims based on an alleged failure to train or supervise SLMPD officers. The City argues that plaintiff fails to allege any facts to plausibly state a claim under either theory of liability, and instead merely pleads "mere formulaic elements" of the causes of action.

In response, plaintiff contends the complaint's allegations give rise to a "reasonable inference the City was aware of the need to train, supervise, and discipline its officers" regarding the use of excessive force, chemical agents, and unconstitutional seizures against non-violent protestors, pointing to its factual allegations the City has a history of responding with excessive force to protestors invoking their First Amendment rights by using chemical agents without warning, without giving an opportunity to comply with any instructions, without minimizing the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions; the settlement agreement in Templeton; and the preliminary injunction issued in Ahmad; and allegations the SLMPD continued to violate protestors' constitutional rights even after the settlement agreement and preliminary injunction.

To survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. To state a viable § 1983 claim against the City for failure to train and supervise, plaintiff must plead facts sufficient to show that

(1) the City's police officer training and supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the City's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the City's alleged training and supervision deficiencies caused plaintiff's constitutional deprivation. See Ulrich v. Pope Cty., 715 F.3d 1054, 1061 (8th Cir. 2013) (citing Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)). Ultimately, plaintiff must prove that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Brewington, 902 F.3d at 803 (quoting Livers, 700 F.3d at 356).

The complaint pleads sufficient factual allegations to plausibly show the City had notice of a pattern of unconstitutional acts committed by SLMPD officers with respect to using chemical agents against peaceful protestors without first giving warning. However, the complaint does not plead facts sufficient to establish the remaining elements of claims for failure to train and supervise: There are no factual allegations concerning failure to train, and the sole factual allegation concerning failure to supervise is vague and conclusory (Doc. 18, ¶ 72). Count III merely offers the conclusion that "Defendant City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of force." (Doc. 18, ¶ 94.) It is not up to this Court to "conjure up unpled allegations to save a complaint," Gregory, 565 F.3d at 473, or "to try to . . . connect the dots between [plaintiff's] allegations and his legal theories." Management Registry, Inc. v. A.W. Cos., Inc., 2019 WL 1560749, at *2, __ F.3d __ (8th Cir. Apr. 11, 2019). Plaintiff "fails to provide facts in his complaint to support his assertion that [the City] adopted deficient supervision and training practices

with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the [City's] deliberate and conscious choices." Ulrich, 715 F.3d at 1061.[10]

The Court will grant the City's motion to dismiss plaintiff's Monell claims based on its failure to supervise and failure to train SLMPD officers, but will grant plaintiff leave to amend these claims if he chooses to do so.

### 3. *State Law Claims – Sovereign Immunity*

The City moves to dismiss plaintiff's state law tort claims against it in Counts IV, V, VI, and VIII, on the basis that the claims are barred by sovereign immunity. The City argues plaintiff cannot establish a prima facie case because the complaint fails to plead specific facts to demonstrate that the City has waived sovereign immunity by purchasing an insurance policy that covers plaintiff's claims. Plaintiff responds that his complaint alleges the City obtains insurance from or is self-insured by the Public Facilities Protection Corporation ("PFPC"), and that this statement, accepted as true, is sufficient to meet his pleading burden and survive a motion to dismiss. Plaintiff also points to a January 31, 2018 letter signed by City Counselor Julian L. Bush, filed as an exhibit in another case in this district, that states in part the PFPC can be "properly thought to be self-insurance." See Faulk v. City of St. Louis, No. 4:18-CV-308 JCH (E.D. Mo.) (Doc. 65-2).[11]

---

[10]"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' [Board of Comm'rs of] Bryan Cty., [Okl. v. Brown], 520 U.S. [397,] 410 [(1997).] Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. Id., at 407. The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.' Canton, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part)." Connick v. Thompson, 563 U.S. 51, 61-62 (2011).

[11]"While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items

The complaint here alleges in pertinent part:

> Defendant City of St. Louis obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to *pay claims against the City*.

> Alternatively, the city's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program *for claims, judgments, and other related legal matters* . . . ."

> By possessing such insurance or self-insurance, the City has waived sovereign immunity *on state claims* pursuant to § 537.610.1, RSMo.

(Doc. 18, ¶¶ 101-103, 111-113, 118-120, 133-135) (emphases added).

Under Missouri law, public entities are generally immune from state tort law claims under Missouri Revised Statutes § 537.600, except in three enumerated circumstances. See Martin v. Missouri Highway & Transp. Dept., 981 S.W.2d 577, 579 (Mo. Ct. App. 1998). Sovereign immunity is waived for torts (1) arising out of the negligent operation of motor vehicles by public employees, § 537.600.1(1) (2) injuries caused by the dangerous condition of public property, § 537.600.1(2); or (3) when a political subdivision purchases liability insurance to cover tort claims other than those set out in § 537.600.1, in the amount of and for the purposes covered by the insurance purchased, § 537.610.1. Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003); Brennan ex rel. Brennan v. Curators of Univ. of Mo., 942 S.W.2d 432, 434 (Mo. Ct. App. 1997). "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized

---

appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)." Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012); see also Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (public records, such as court records, may be considered in deciding a Rule 12(b)(6) motion).

common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]"  Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 921-22 (Mo. 2016) (en banc).[12]

"Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case."  Newsome v. Kansas City, Mo. Sch. Dist., 520 S.W.3d 769, 776 (Mo. 2017) (en banc) (quoted case omitted).  "[F]inding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity."  Parish v. Novus Equities Co., 231 S.W.3d 236, 242-43 (Mo. Ct. App. 2007) (cited case omitted).  "Whether sovereign immunity is waived in a particular case depends on whether the plaintiff's claim falls within the purposes covered by the defendant's policy."  Hummel v. St. Charles City R-3 Sch. Dist., 114 S.W.3d 282, 284 (Mo. Ct. App. 2003).

In another case in this district, Fortenberry v. City of St. Louis, the Court recently denied the City's motion to dismiss state law tort claims on the basis of sovereign immunity, where the complaint alleged the City self-insures through the Public Facilities Protection Corporation to "insure the city against *all claims.*"  2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019).  The Court stated in Fortenberry that the City Counselor's January 31, 2018 letter, an exhibit to the complaint in that case, "provides that the Defendant City uses PFPC funds to settle its liability in cases of police misconduct."  Id.

Here, the complaint alleges that the City either obtains insurance from or is self-insured by the PFPC to "pay claims against the City" "for claims, judgments, and other related legal matters."

---

[12]A suit against a government employee in his or her official capacity is equivalent to a suit against the government entity itself, and sovereign immunity therefore also applies with equal force in the context of official-capacity claims.  Fischer v. Steward, 2010 WL 147865, at *11 (E.D. Mo. Jan. 11, 2010) (citing Betts-Lucas v. Hartmann, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002)).

The Court finds these factual allegations are substantially equivalent to those held sufficient to survive a motion to dismiss in <u>Fortenberry</u>, i.e., that the City "self-insures" through the PFPC to cover "all claims." 2019 WL 1242671, at *7. Accepting the complaint's allegations as true, and giving them the reasonable inferences that arise therefrom, plaintiff has adequately pleaded that the City has waived sovereign immunity under § 537.610.1 by obtaining insurance from or self-insuring through the PFPC for the state law tort claims in this case.

The City's motion to dismiss the state law tort claims in Counts IV, V, VI, and VIII on the basis of sovereign immunity will therefore be denied.

D.  <u>Defendants Hayden and Olsten – State Law Claims – Official Immunity</u>

Defendants Hayden and Olsten move to dismiss plaintiff's state law tort claims in Counts IV, V, VI, and VIII on the basis that the claims are barred by the Missouri doctrine of official immunity. Hayden and Olsten assert they were performing discretionary duties in connection with the Busch Stadium incident, with Hayden exercising professional expertise and judgment in deciding to use force and Hayden acting purely in a supervisory capacity, so they are entitled to official immunity. Hayden and Olsten assert that while plaintiff generically alleges bad faith and malice on their parts, he does not allege any facts to support these assertions, such that official immunity would not apply.

Plaintiff responds that because Olsten used force on him while plaintiff was acting lawfully, Olsten was not acting within the scope of his authority, and defendant Hayden was not acting within the scope of his authority when he failed to intervene and instead recorded Olsten's conduct. Plaintiff cites no legal authority in support of his "scope of authority" argument and the Court will therefore not address it. Plaintiff also responds that official immunity does not apply because the complaint alleges the facts to show Hayden and Olsten acted with malice or in bad faith.

The Missouri doctrine of official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008) (en banc). "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." Id. (citation omitted). "A police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (citing Davis v. Lambert–St. Louis Int'l Airport, 193 S.W.3d 760, 763 (Mo. 2006) (en banc) ("An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued.") (quotation omitted)).

"Police officers are not liable for negligent acts that are related to discretionary functions." Blue v. Harrah's North Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). However, it is well established in Missouri law that official immunity "does not apply to discretionary acts done in bad faith or with malice." Id. (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986) (en banc)). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Adolf, 706 S.W.2d at 447 (quotation omitted). "Bad faith" means "conscious wrongdoing" or "breach of a known duty through some ulterior motive," and "ordinarily contains a requirement of actual intent to cause injury." Id.

In this case, the complaint expressly alleges the legal conclusions that Olsten and Hayden acted with malice, bad faith, and the intent to harm plaintiff. These conclusions, which serve as part of the framework for the claim but which the Court does not accept as true, Iqbal, 556 U.S. at 678,

are supported with the following factual allegations the Court must accept as true: Defendant Olsten sprayed pepper spray into plaintiff's face without warning, although plaintiff was not engaged in any unlawful activity and Olsten had no reason to feel threatened, after Olsten yelled an obscenity at and moved toward peaceful protestors in an unsuccessful attempt to goad and incite them, and after other officers had attempted to restrain and calm a visibly agitated Olsten; and defendant Hayden observed and recorded all of his subordinate Olsten's conduct from five feet away but took no action to prevent it.

Assuming that Hayden and Olsten's actions in policing the peaceful protest outside of Busch Stadium and in determining to use force were discretionary, the complaint's factual allegations accepted as true describe a conscious abuse of official duty and power and an intent to injure that give rise to a reasonable inference of malice or bad faith, and are adequate to survive a motion to dismiss. Compare Jiang v. Porter, 156 F.Supp.3d 996, 1006 (E.D. Mo. 2015) (denying motion to dismiss based on official immunity where the complaint alleged police officer defendants acted with malice, bad faith, and the intent to harm plaintiff, and asserted factual allegations supporting the inference the defendants acted with these requisites to disqualify them from official immunity); Moore v. City of Ferguson, Mo., 2015 WL 4525522, at *3 (E.D. Mo. July 27, 2015) (denying motion to dismiss based on official immunity where plaintiff alleged "ample allegations going to bad faith or malice" where the complaint stated police officers used a Taser on plaintiff without any legitimate police purpose and only to inflict pain); Taylor ex rel. Taylor v. Isom, 2013 WL 1867106, at *9 (E.D. Mo. May 2, 2013) (denying motion to dismiss based on official immunity where plaintiff alleged she was arrested without probable cause and police officer ordered her arrested because she "voiced her displeasure at the method by which the officers were arresting [a] third party.");

Defendants Hayden and Olsten's motion to dismiss plaintiff's state law tort claims in Counts IV, V, VI, and VIII on the basis of official immunity will be denied.

E. Defendants' Alternative Motion to Strike

Finally, the Court addresses defendants' alternative motion to strike as immaterial and impertinent paragraphs 14-18, 20-21, 30-31, and 68-17 of the complaint. As discussed above, *supra* Part III.A., these paragraphs allege facts concerning the Stockley verdict, the nature of public protests in response thereto, and prior orders of this Court in separate lawsuits concerning SLMPD actions in response to public protests.

Under Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f), Fed. R. Civ. P. "Striking a party's pleading . . . is an extreme and disfavored measure." BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citing Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000)). Motions to strike are infrequently granted, but resolution of such a motion lies within the broad discretion of the Court. Stanbury, 221 F.3d at 1063. "To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." 2 James W. Moore, et al., Moore's Federal Practice §12.37[3] (3rd ed. 2018) (internal quotation marks omitted).

"Immaterial claims are those lacking essential or important relationships to the claim for relief. Impertinent claims are those that do not pertain to the issues in question." Simms v. Chase Student Loan Servicing, LLC, 2009 WL 943552, at *2, n.3 (E.D. Mo. Apr. 6, 2009) (internal citation and cited case omitted). As discussed in connection with defendants' motion to dismiss under Rule 8(a), the Court finds the paragraphs of the complaint that defendants move to strike are relevant to

plaintiff's claims and the issues in this case. Therefore, they are neither immaterial nor impertinent. Defendants fail to meet their burden and the alternative motion to strike will be denied.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the defendants' motion to dismiss. The motion will be denied to the extent it is based on Rule 8(a), Fed. R. Civ. P. The motion will be granted in part, denied in part, and denied in part as moot, to the extent it asserts failure to state a claim upon which relief can be granted under Rule 12(b)(6): The motion will be denied as moot as to plaintiff's § 1983 Fourth and Fourteenth Amendment excess force claim against defendant Hayden, as the complaint does not plead such a claim. The motion will be denied as to the § 1983 conspiracy claim in Count II. The motion will be denied as to the Monell policy or custom claims in Count III, and granted as to the failure to train and supervise claims in Count III. The motion will be denied as to plaintiff's state law claims against the City on the basis of sovereign immunity, and denied as to plaintiff's state law claims against defendants Hayden and Olsten on the basis of official immunity. The alternative motion to strike will be denied.

Plaintiff will be granted leave to amend his complaint to assert Fourth and Fourteenth Amendment excess force claims against defendant Hayden, and Monell failure to train and supervise claims against the City, if he wishes to do so.

Accordingly,

**IT IS HEREBY ORDERED** that defendants City of St. Louis, Missouri, John Hayden, and William Olsten's motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to plaintiff's § 1983 Monell claims against defendant City of St. Louis in Count III based on failure to train and supervise; **DENIED as moot** as to Fourth and Fourteenth Amendment excess force claims against defendant Hayden; and **DENIED** in all other respects. [Doc. 26]

**IT IS FURTHER ORDERED** that defendants City of St. Louis, Missouri, John Hayden, and William Olsten's alternative motion to strike is **DENIED**.  [Doc. 26]

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint by **May 8, 2019**, to assert Fourth and Fourteenth Amendment excess force claims against defendant Hayden, and <u>Monell</u> failure to train and supervise claims against the City.

If a second amended complaint is filed, plaintiff shall specify in the body of each count, by name, each defendant against whom or which the count is directed; and for any count directed against defendant Hayden or Olsten, whether the count is asserted against that defendant in his individual or official capacity, or both.  A second amended complaint will completely replace prior complaints, and cannot incorporate them by reference.

**IT IS FURTHER ORDERED** that if plaintiff does not timely file a second amended complaint, the Court will issue an order of partial dismissal with respect to the <u>Monell</u> claims against the City in Count III for failure to train and supervise.

**IT IS FURTHER ORDERED** that defendants are granted an extension of time to file their answers to the First Amended Complaint.  <u>See</u> Rule 12(a)(4)(A), Fed. R. Civ. P.  If plaintiff does not file a second amended complaint, defendants shall file their answers by **May 13, 2019**.  If plaintiff files a second amended complaint, defendants shall file their answers thereto within the time allowed by Rule 15(a)(3), Fed. R. Civ. P.

_Charles A. Shaw_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  17th  day of April, 2019.