# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RASHEEN ALDRIDGE, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:18-CV-1677 CAS |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant William Olsten's motion to stay proceedings and the parties' joint motion to stay alternative dispute resolution referral. Plaintiff opposes defendant Olsten's motion to stay proceedings and it is fully briefed as Olsten did not file a reply in support of his motion and the time to do so has passed. The Court will grant in part and deny in part the motion to stay proceedings, and will deny as moot the joint motion to stay referral to alternative dispute resolution.

## I. Background

The Second Amended Complaint ("complaint") alleges that plaintiff took part in a peaceful public protest against police violence on September 29, 2017. The protest occurred on the streets of downtown St. Louis, including near Busch Stadium, beginning at approximately 7:00 p.m. The complaint alleges that at around 9:00 p.m., protestors who had been marching elsewhere in downtown St. Louis began making their way south on Broadway towards Busch Stadium and the intersection of Broadway and Walnut Street. The complaint alleges that when the protestors reached the intersection of Broadway and Walnut, St. Louis Metropolitan Police Department ("SLMPD") officers "began indiscriminately using pepper spray on civilians without provocation of violence or

criminal behavior." Video evidence shows the protestors were acting peacefully and calmly. (Doc. 37, ¶¶ 45-46.)

The complaint alleges that without warning, a SLMPD officer violently threw one protestor to the ground breaking his glasses, and the protestors then began to loudly voice their disapproval of the force used. Many people in the area, including protestors, loudly questioned why the police decided to use violence. The complaint alleges that two SLMPD officers began to chase another protestor, Calvin Kennedy, and tasered him without warning after an officer grabbed Mr. Kennedy. The protestors then began demanding why the SLMPD had deployed a Taser.

The complaint alleges that video shows defendant Olsten, a SLMPD officer, yelled at a protestor, "Come and fuck me up then," and moved toward the protestors, while two other SLMPD officers tried to grab Olsten, calm him down, and move him away from the crowd. The complaint alleges the video shows defendant Hayden, at the time a SLMPD major, standing approximately five feet to the right of Olsten. The complaint alleges that although Olsten was not in danger or trying to extricate himself from a dangerous situation, he became more agitated as evidenced by his "very pronouncedly chomp[ing] on his gum and begin[ing] to flex his muscles." (Doc. 37, ¶¶ 55-58.) Then, Olsten pulled out and fired a "large fogger like canister of pepper spray" without first giving any dispersal order or warning, and the spray hit plaintiff and three other citizens. (Id., ¶¶ 59-61.)

The complaint alleges that plaintiff began to feel excruciating pain from the pepper spray, his eyes began to burn, mucus ran from his nose, and his breathing became labored. The complaint alleges defendant Olsten made no attempt to effectuate any arrests after spraying plaintiff and others with the pepper spray and instead walked away. The complaint alleges that during the incident, defendant Hayden was in the middle of the SLMPD officers wearing a white shirt, indicating he was a supervisor. The complaint alleges, "Hayden took no steps to prevent his officers from inflicting

2

punishment on peaceful protestors and members of the media," and "is observed in the video using a cell phone to record the activities and the police response." (Doc. 37, ¶ 67.)

Plaintiff filed this action on October 2, 2018. The complaint asserts federal claims under 42 U.S.C. § 1983: Violation of plaintiff's First and Fourteenth Amendment rights to assembly, association, free speech, and a free press against defendants Olsten and Hayden (Count I); a Monell claim against the City of St. Louis, Missouri ("City") claiming the violations of plaintiff's civil rights were caused by specified policies, practices, or customs of the SLMPD, and by its failure to train and supervise SLMPD officers with respect to use of force (Count II);[1] a Fourth and Fourteenth Amendment excessive force claim against defendant Olsten (Count VI); and a Fourth and Fourteenth Amendment failure to intervene claim against defendant Hayden (Count VII). The complaint also asserts supplemental state law claims against all of the defendants: assault (Count III); intentional infliction of emotional distress (Count IV); negligent infliction of emotional distress (Count V); and battery (Count VIII).

Defendant Olsten was originally represented in this case by the St. Louis City Counselor's Office. On July 16, 2019, a criminal complaint was filed against Olsten in the Twenty Second Judicial Circuit for the State of Missouri charging him with two counts of Assault in the Third Degree–Special Victim, class D felonies, and one count of Assault in the Third Degree, a class E felony. See State of Missouri v. William C. Olsten, Case No. 1922-CR02199 (22nd Jud. Cir., State of Mo.). (Doc. 55-1, Ex. A.) Count I of the criminal complaint charges that Olsten knowingly caused physical injury to R.A. (the plaintiff in this case), a disabled person and special victim, by spraying him with pepper spray on September 29, 2017. (Id.) As a result, the City Counselor's

---

[1] Monell v. Department of Social Servs. of City of New York, 436 U.S. 658 (1978).

Office moved to withdraw as counsel for Olsten on August 23, 2019. (Doc. 44.) The motion to withdraw was granted (Doc. 46) and Olsten subsequently obtained his current counsel, who filed Olsten's answer to the complaint and the instant motion to stay proceedings. On September 19, 2019, Olsten was indicted by a grand jury in the City of St. Louis on the same three charges.

Olsten seeks an indefinite stay pending final resolution of the pending state criminal proceedings on the basis that the criminal prosecution and the claim in this matter arise from the same facts and involve "identical issues and witnesses." Olsten asserts he will suffer irreparable harm if this case proceeds and he is forced to choose between asserting and preserving his constitutional right against self-incrimination and defending himself by responding to discovery and testifying. (Doc. 55.)

Plaintiff opposes the motion, contending a stay is inappropriate as Olsten waived his Fifth Amendment rights in this proceeding by filing an Answer that did not assert the privilege. Plaintiff further contends that even if Olsten did not waive the privilege a stay is not warranted and would be prejudicial to plaintiff. (Doc. 58.) In the alternative, plaintiff asserts that a stay of the entire case is not appropriate and discovery as to the City and defendant John Hayden should be allowed to proceed while discovery and deposition of Olsten can be conducted after his criminal case has been resolved.

**II. Discussion**

    A. <u>Olsten Has Not Waived his Fifth Amendment Rights</u>

Plaintiff's threshold argument is that Olsten waived the right to invoke his Fifth Amendment privilege against self-incrimination by filing an answer that does not assert the privilege, but instead "admits and denies specific allegations regarding the conduct at issue." (Doc. 58-1 at 3.) Olsten did

4

not file a reply in support of his motion to stay proceedings and thus does not offer a response to this argument.

Olsten's failure to address the waiver argument is a risky and questionable strategy. Nonetheless, the Court finds plaintiff has not established that Olsten intentionally waived the right to invoke his Fifth Amendment privilege under the circumstances of this case. Waiver requires the "intentional relinquishment or abandonment of a known right." Wood v. Milyard, 566 U.S. 463, 474 (2012) (quoting Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004)). "There is a presumption against the waiver of constitutional rights[.]" Williams v. Brewer, 509 F.2d 227, 232 (8th Cir. 1974) (citing Glasser v. United States, 315 U.S. 60, 70-71 (1942)).

In his answer, Olsten admits a few foundational and legal allegations – the nature of plaintiff's claims; jurisdiction and venue; the identity of the parties; that Stockley was acquitted and public protests followed the acquittal; that the First Amendment guarantees certain protections; and that Olsten was acting under color of state law – but then denies all substantive allegations in the complaint, or states he lacks information sufficient to form a belief as to the truth thereof and denies on that basis. To the extent Olsten admits these foundational allegations in the complaint the admissions stand, but by their nature these do not result in a waiver of Olsten's Fifth Amendment rights. Compare King v. Evans, 2015 WL 5316773, at *2-3 (N.D. Ill. Sept. 11, 2015) (defendant police officer did not waive his Fifth Amendment rights by answering civil rights complaint after criminal charges were filed against him, where the answer admitted "certain precatory or preliminary allegations" of the complaint but denied its substantive allegations).[2]

---

[2]The primary case cited by plaintiff to support his waiver argument is readily distinguishable on its facts. In United States v. Certain Real Prop. & Premises Known as 63-29 Trimble Rd., Woodside, N.Y., 812 F. Supp. 332, 334 (E.D.N.Y. 1992), the court denied a party's motion to stay civil forfeiture proceedings based on an assertion of Fifth Amendment privilege against self-

B. Olsten's Motion to Stay Proceedings

The Court now turns to Olsten's motion to stay the proceedings. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254-55. "Justice must be done in both criminal and civil litigation. The rights of a defendant in a criminal case must, of course, be protected. But this does not mandate a complete disregard for the rights of civil litigants." General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1213 (8th Cir. 1973). Consequently, "A stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted. However, a civil defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege." Koester v. American Republic Invs., Inc., 11 F.3d 818, 823 (8th Cir. 1993) (citation omitted). "Therefore, to warrant a stay, defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." Id. (internal citation omitted).

"[A] stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." Liggins v. Cohen, 4:16-CV-413 AGF, slip op. at 3 (E.D. Mo. Mar. 8, 2018) (quoted case omitted). The decision whether to stay civil litigation in deference

---

incrimination because (1) the party had already been tried and convicted three years previously and there was no possibility of further punishment, and (2) the party filed an answer to the complaint, responses to the government's interrogatories, and despite a magistrate judge's "explicit admonitions about the gravity of Fifth Amendment waiver" testified about the facts of the case at deposition, and thus was found to have waived her Fifth Amendment rights in connection with the forfeiture proceedings.

6

to parallel criminal proceedings is discretionary and requires the Court to "assess and balance the nature and substantiality of the injustices claimed on either side." General Dynamics, 481 F.2d at 1214-15 (quoted case omitted). The Eighth Circuit has not specified a set of factors to analyze whether a stay is necessary in light of parallel criminal proceedings, but this Court and other district courts in the Eighth Circuit have generally considered the following factors adopted by the Ninth Circuit:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

White v. Feaman, 2018 WL 5831261, at *2 (E.D. Mo. Nov. 7, 2018) (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 325 (9th Cir. 1995)).

Upon careful consideration of these factors, the Court concludes a partial stay of the civil proceedings is warranted as to defendant Olsten only, as a majority of the factors weigh in favor of such a stay.

1. *Plaintiff's Interests and Potential Prejudice of Delay*

Plaintiff has a legitimate interest in the expeditious resolution of this case, which seeks to vindicate important constitutional rights and was filed fifteen months ago, and plaintiff states he does not want to delay any longer. Olsten does not estimate when a trial may take place in the criminal case but asserts that plaintiff will benefit from a stay as he will have access to the discovery and trial testimony elicited in the criminal case prior to proceeding with discovery from Olsten in this case.

According to records available on Missouri Case.net, the state criminal case is not set for trial but instead has a case status hearing or alternatively a plea hearing scheduled for February 6, 2020. The parties have not suggested how long it may be before the criminal case is resolved but from the undersigned's experience in state court the delay may be lengthy.

The Court finds that plaintiff would suffer prejudice and unnecessary delay by a stay of all proceedings in this case, even though he may benefit from the resolution of or discovery obtained in the criminal case against Olsten. Plaintiff's prejudice and delay would be lessened by allowing discovery to proceed as to the other defendants, however. This factor weighs against a delay of all proceedings in this case.

2. *Burden on Defendant Olsten*

Olsten asserts he will suffer substantial, irreparable harm if the stay is not granted because if discovery is allowed to proceed in this case, he would have to choose between asserting and preserving his constitutional right against self-incrimination and defending himself in this matter by answering interrogatories and providing deposition and trial testimony, which could potentially be used against him in the criminal case. Or if he chooses not to testify, the jury could draw a negative inference from his silence. Plaintiff argues the Court should follow its ruling in Liggins, 4:16-CV-413 AGF (E.D. Mo. Mar. 8, 2018), which lifted a stay of proceedings in a Section 1983 civil rights case based on prejudice and delay to the plaintiff where the defendant police officer had been under investigation for two years but no criminal charges had been filed.

Olsten's counsel in the criminal case is the same counsel representing him in this civil action. Plaintiff does not dispute Olsten's contention that the criminal prosecution and civil case arise out of the same facts and involve nearly identical issues and witnesses, and this is borne out by a comparison of the facts alleged in the complaint and the allegations of the criminal complaint and

indictment.  See, e.g., Stroud v. St. Louis City Police Dep't, 2009 WL 3617457, at *1 (E.D. Mo. Oct. 28, 2009) (granting stay pending final resolution of criminal case where pending criminal case arose from the same incident at issue in civil Section 1983 case based on excessive force and cases involved same issues and potential witnesses).  Further, unlike the Liggins case cited by plaintiff, Olsten has been indicted and a "stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct."  S.E.C. v. Gerhardt, 2007 WL 1452236, at *2 (E.D. Mo. May 15, 2007) (internal quotations and citations omitted) (granting stay pending conclusion of trial in criminal case).

Under these circumstances, the Court finds that Olsten has made a "strong showing" the actions are "so interrelated" he cannot protect himself in civil discovery and at trial by selectively invoking his Fifth Amendment privilege, and the two trials would so overlap that effective defense of both is impossible.  See Koester, 11 F.3d at 823.  As a result, the Court finds a substantial burden rests on Olsten that weighs strongly in favor of a partial stay of the case as to him but does not warrant a stay of the entire civil proceeding

### 3. *The Court's Interests in Case Management and Judicial Efficiency*

The Court has a strong interest in managing its docket and keeping litigation moving to a conclusion without unnecessary delay.  That said, the Court concludes granting a partial stay as to defendant Olsten would not unduly interfere with the management of its docket.  While a partial stay is likely to delay a final disposition of this case, the Court does not anticipate it would require the expenditure of significant additional judicial resources, and it is possible that resolution of the criminal case and the discovery obtained therein may streamline the civil case proceedings.  See, e.g., Ruszczyk v. Noor, 2018 WL 4759838, at *5 (D. Minn. Oct. 2, 2018) (finding stay in case where there was substantial overlap between criminal proceedings and Section 1983 civil claims against

9

same defendant would conserve judicial resources, would likely lead to relevant discovery for the civil proceeding, and could possibly simplify the issues or resolve liability questions in the civil proceedings.) That plaintiff will be allowed to conduct discovery from the City and defendant Hayden will lessen the potential delay and inefficiency that may arise from the partial stay as to Olsten. This factor is relatively neutral.

4. *Interests of Non-Parties and the Public*

Olsten states he is not aware of any interest the public or non-parties might have in the outcome of this litigation, but asserts his interest in preserving his constitutional right against self-incrimination outweighs any public interest. Plaintiff responds that the public "has a strong interest in the integrity of those entrusted with the formidable powers and authority of a police officer" and states there was extensive media coverage of the protests and the "unlawful actions of the [SLMPD]" as well as of Olsten himself based on the criminal charges brought against him. (Doc. 58 at 8.)

Courts have recognized the public interest in ensuring that the integrity of the criminal process is not subverted, some stating that such interest is entitled to precedence over the interests of a civil litigant. See, e.g., State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc., 2016 WL 9307608, at *6 (D. Minn. Apr. 26, 2016); Gerhardt, 2007 WL 1452236, at *2. However, the public certainly has an interest in the prompt resolution of this civil matter. See, e.g., Ruszczyk, 2018 WL 4759838, at *6 ("Few disputes grab America's conscience, and indeed that of civil societies throughout the world, more than where there is a claim the very individuals or institutions people have mandated to use force when necessary to secure persons, rights, and property have . . . exceed[ed] the force necessary to uphold that mandate."). Overall, the Court finds the non-party and

public interest factors are relatively neutral under the circumstances of this case and are best served by a partial stay of this case as to defendant Olsten only.

## III. Conclusion

Considering the relevant factors and balancing the nature and weight of the rights and inequities claimed by plaintiff and defendant Olsten, the Court concludes a complete stay of proceedings in this case until final disposition of the state criminal case is not warranted, but a partial stay of the proceedings is warranted as to defendant Olsten to permit him preserve his Fifth Amendment right against self-incrimination.

The Court will order plaintiff and defendants City and Hayden to submit a joint proposal for amendment of the Case Management Order to facilitate discovery between them.

The Court will deny as moot the parties' joint motion to stay referral of the case to alternative dispute resolution, as it was based on the pendency of the motion to stay and only requested a stay of the ADR referral until after resolution of the motion to stay. The parties may file any new motion concerning ADR they deem appropriate.

Defendant Olsten will be ordered to file a status report concerning the criminal case every forty-five days and within ten days after the entry of a plea or return of a verdict.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Olsten's Motion to Stay Proceedings is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** to the extent that a stay of proceedings is imposed in this matter as to defendant Olsten only and **DENIED** in all other respects. [Doc. 55]

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Stay Alternative Dispute Resolution Referral is **DENIED** as moot. [Doc. 68]

**IT IS FURTHER ORDERED** that plaintiff and defendants City of St. Louis, Missouri and John Hayden shall file a joint proposal for amendment of the Case Management Order by **January 29, 2020**.

**IT IS FURTHER ORDERED** that defendant Olsten shall file a report with the Court regarding the status of <u>State v. Olsten</u>, Case No. 1922-CR02199-01 (22nd Jud. Cir., State of Mo.), by **March 2, 2020**, and every forty-five (45) days thereafter during the partial stay, and within ten (10) days after the entry of a plea or return of a verdict.

*[signature]*

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  15th  day of January, 2020.